IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA              :

      v.                                            :              CRIMINAL NO. 19-393

GREGORY DOW                           :

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, William M. McSwain, United States Attorney for the Eastern District of Pennsylvania, and Timothy M. Stengel, Assistant United States Attorney for the District, respectfully submits this sentencing memorandum in advance of a sentencing hearing scheduled for November 25, 2020.

On July 11, 2019, a federal grand jury returned an Indictment, charging the defendant Gregory Dow with four counts of engaging in illicit sexual conduct in a foreign place, in violation of Title 18, United States Code, Sections 2423(c) and (e).  The defendant pleaded guilty on June 15, 2020 to all four counts in the Indictment, and in doing so, the defendant admitted that he sexually abused four young girls in an orphanage he operated in the Republic of Kenya.

The defendant's guilty plea was entered pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), in which the parties agreed to recommend a term of imprisonment of 188 months. The parties made no agreement as to any appropriate financial penalties or term of supervised release.

For the reasons set forth below, the government respectfully requests that the Court accept the parties' recommendation and sentence the defendant to 188 months' imprisonment. The government also requests that the Court sentence the defendant to a lifetime of supervised

release.  The government is not requesting that the Court levy a fine in this case, but the government will ask the Court to order restitution, either at the sentencing hearing or after a separate hearing for the purpose of determining the appropriate restitution amount.

## I.   BACKGROUND

In early 2008, the defendant, who is an American citizen, and his family traveled from Lancaster County, Pennsylvania to the Republic of Kenya to start an orphanage.  The orphanage, which came to be known as the Dow Family Children's Home, was established near Boito, Kenya in or around April 2008.  It remained in operation for nearly a decade with financial support from donors in the United States, including LifeGate Church, where the defendant worshipped, and other faith-based organizations.

In September 2017, two children living at the Dow Family Children's Home reported to Kenyan authorities that they and others at the home were being abused, both physically and sexually.  They also reported that the defendant's wife, with whom he operated the Dow Family Children's Home, took many of the girls under their care to a medical clinic in Kenya to have Norplant – a birth control device – implanted in their arms without their consent.  In response, Kenyan authorities shut down the Dow Family Children's Home, and the defendant fled Kenya to avoid facing criminal charges in that country.

In the fall of 2018, acting on information provided by Kenyan nationals living in the United States, the Federal Bureau of Investigation (FBI) began investigating the defendant's activities in Kenya.  The FBI investigation, which included interviews of victims and witnesses in Kenya, established that between 2013 and 2017, the defendant repeatedly sexually abused four young girls under his care at the Dow Family Children's Home.  This included forcible vaginal intercourse.  The defendant was able to perpetrate these crimes without fear that the abuse would

result in pregnancy because he knew that his wife had taken his victims to have birth control

devices embedded in their arms.

The following is a partial summary of the abuse suffered by each of the four victims, who

were identified as Minor 1, Minor 2, Minor 3, and Minor 4 in the Indictment.[1]  As the Court is

aware, at the change of plea hearing in this case, the defendant specifically admitted to the

following conduct:

- The defendant sexually abused Minor 1 multiple times between October 2013 and September 2017, during which Minor 1 was approximately 13 to 17 years old.  The defendant penetrated Minor 1's vagina with his penis and he inserted his penis into her mouth.

- The defendant sexually abused Minor 2 multiple times between October 2013 and September 2017, during which Minor 2 was approximately 11 to 15 years old.  The defendant penetrated Minor 2's vagina with his penis and his fingers.  He also touched Minor 2's breasts with his hand and mouth.

- The defendant sexually abused Minor 3 multiple times between October 2013 and September 2017, during which Minor 3 was approximately 12 to 16 years old.  The defendant penetrated Minor 3's vagina with his finger and touched her breasts.

- The defendant sexually abused Minor 4 multiple times between October 2013 and September 2017, during which Minor 4 was approximately 11 to 15 years old.  The defendant penetrated Minor 4's vagina with his penis and touched her breasts with his hand.

Importantly, these were not the defendant's first victims.  In 1996, the defendant pleaded

guilty in Iowa state court to Assault with Intent to Commit Sexual Abuse, in violation of Iowa

Code Sec. 709.11, after he molested another minor child.  Worse, prior to moving to Kenya, the

defendant informed some members of his church, who were also his benefactors, of this prior

---

[1] Written victim impact statements from all four victims, plus two additional minors who resided at the Dow Family Children's Home, were filed under seal with this memorandum.  *See* Exhibit A (filed under seal).  Additionally, the government anticipates that two of the victims will address the Court at sentencing via a video teleconference link from the United States Embassy in Nairobi.

conviction.  Yet they still supported him in opening the orphanage in Kenya where the defendant, a convicted sex offender, would be caring for and in control of numerous vulnerable children.

The defendant was charged by Indictment in June 2019 with four counts of engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c) and (e).  He pleaded guilty on June 15, 2020, and he is scheduled to be sentenced for his crimes on November 25, 2020.

## II.   SENTENCING CALCULATIONS

### A.   Statutory Maximum Sentence

The Court may impose the following mandatory minimum and statutory maximum penalties:  for each of Counts One through Four, 30 years' imprisonment, a mandatory minimum of 5 years' supervised release up to a lifetime of supervised release, a $250,000 fine, and a $100 special assessment.  For conduct occurring after May 29, 2015, if found to be non-indigent, the defendant will face an additional mandatory special assessment of $5,000 per count of conviction, pursuant to 18 U.S.C. § 3014.  In this case, each count encompasses conduct occurring after May 29, 2015, so this additional special assessment applies to the defendant, so long as this Court finds him not to be indigent. Full restitution in an amount to be determined by the Court also shall be ordered.

The total mandatory minimum and statutory maximum sentence is therefore: 120 years' imprisonment, a mandatory minimum of 5 years' supervised release up to a lifetime of supervised release, a $1,000,000 fine, and a $20,400 special assessment.  Full restitution in an amount to be determined by the Court also shall be ordered, and the government is working to determine what, if anything, is the appropriate restitution amount.  Forfeiture of any property,

real or personal, used or intended to be used to commit or to facilitate the commission of such

violations, or any property, real or personal, that constitutes or is derived from proceeds traceable

to any such violations, also may be ordered.

Additionally, supervised release may be revoked if its terms and conditions are violated.

When supervised release is revoked, the original term of imprisonment may be increased by up

to three years for each count of conviction.  Thus, a violation of supervised release increases the

possible period of incarceration and makes it possible that the defendant will have to serve the

original sentence, plus a substantial additional period, without credit for time already spent on

supervised release.

### B.       Sentencing Guidelines Calculation

As reflected in the Presentence Investigation Report ("PSR"), the Probation Office

calculated an advisory Sentencing Guidelines range of 188 to 235 months' imprisonment. *See*

PSR ¶ 103.  The Probation Office reached its conclusion, with which the government concurs, in

the following way:

The Probation Office first calculated the adjusted offense level for Count One pertaining

to the abuse of "Minor 1," as charged in the Indictment.  Under USSG § 2G1.3, the base offense

level for engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c),

as charged in Court One, is 24.  PSR ¶ 27.  The Probation Office then added two levels, pursuant

to USSG § 2G1.3(b)(1)(B), because Minor 1 was in the care, custody, and supervisory control of

the defendant and his wife at the Dow Family Children's Home.  PSR ¶ 28.  The Probation

Office then added two levels, pursuant to USSG § 2G1.3(b)(2)(B), because the defendant unduly

influenced Minor 1 to engage in prohibited sexual conduct.  PSR ¶ 29.  Finally, the Probation

Office added two levels, pursuant to USSG § 2G1.3(b)(4)(A), because the defendant's actions

constitute the commission of a sex act or sexual contact.  PSR ¶ 30.  This results in an adjusted offense level of 30.

The Probation Office then calculated the adjusted offense levels for Counts Two, Three and Four, pertaining to the abuse of Minor 2, Minor 3, and Minor 4, respectively.  Because the conduct was similar, the adjusted offense level for each of these counts is the same as the adjusted offense level for Count One.  *See* PSR ¶¶ 35-58.  As such, the Probation Office assigned each of the four counts one unit for purposes of calculating the multiple count adjustment found in USSG § 3D1.4.  This results in a multiple count adjustment of four levels, which the Probation Office added to the adjusted offense level for Count One, for a combined adjusted offense level of 34.  PSR ¶¶ 61-62.

The Probation Office then added five levels to the adjusted offense level of 34, because the defendant engaged in a pattern of activity involving prohibited sexual conduct, as contemplated by USSG § 4B1.5(b)(1).  PSR ¶ 63.  The defendant receives a two-level reduction for his acceptance of responsibility, and a one-level reduction for assisting authorities in the investigation of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty. PSR ¶¶ 64-65.

This results in a total offense level of 36. PSR ¶ 66.  The defendant's criminal history category is I, thereby resulting in an advisory Sentencing Guidelines range of 188-235 months' imprisonment. PSR ¶ 103.  For the reasons set forth below, the government submits that the recommended 188-month term of imprisonment is appropriate in this case.  The government also submits that the defendant's term of imprisonment should be followed by supervised release for the rest of his life.

### III.   SENTENCING FACTORS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion) (ellipsis in original)).  "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing."  *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

1.      **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The nature and circumstances of the offenses to which the defendant has pleaded guilty require a significant term of imprisonment in this case.  The defendant, a convicted sex offender, moved to Kenya to start an orphanage and he did so with financial assistance from individuals and organizations based in the United States, including the church to which he belonged.  He claimed to be a Christian missionary seeking to care for children in need.  In reality, he was a sexual predator who had created a ready supply of victims for himself, and who systematically sexually abused four young girls over the course of approximately four years.

This included raping some of his young victims and forcing them to engage in oral sex. The defendant used his age and position of power to manipulate his victims. For example, one victim described for investigators how the defendant manipulated her by accusing her of having sex with another and then telling her that she had to have sex with him as well.  Another victim described holding herself tight to prevent the defendant from raping her, but ultimately being unable to stop him.  In cannot be overstated that these were vulnerable children placed in the care of the defendant and his wife.  The victims in this case called the defendant "Dad," but instead of protecting them, as a father should, he raped and otherwise sexually assaulted them, preying on their youth, vulnerability, and utter dependence on him.

The defendant's history and characteristics make his crimes even more egregious, as the children the defendant abused in Kenya were not his first victims.  In 1996, the defendant pleaded guilty in Iowa state court to Assault with Intent to Commit Sexual Abuse, in violation of Iowa Code Sec. 709.11, as a result of his sexual abuse of another minor child.  Court records associated with that case show that the defendant snuck into his victim's room and groped her, touching her vagina.

Notably, the defendant's prior conviction does not count toward his criminal history score due to its age, but its relevance to the instant crimes of conviction is obvious.  As a result of that prior conviction, the defendant was sentenced to probation and was required to register as a sex offender for a period of 10 years.  Shortly after the expiration of his registration requirement, the defendant announced that he planned to move to Kenya to start an orphanage.  Worse, he did so with the backing of his church, LifeGate, despite informing leaders of the congregation that he was a previously convicted sex offender.  That anyone, including the defendant, believed that he was suitable to operate an orphanage is unthinkable.  Sadly, the abuse in this case could have – and should have – been prevented.

The defendant has proven over the course of two decades that he is a dangerous sexual predator.  He should therefore face significant penalties, and the government submits that the recommended sentence in this case will reflect the serious nature and circumstances of the offenses, and the defendant's history and characteristics.

2. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The defendant has been convicted of very serious offenses.  The victims in this case were particularly vulnerable, given their age and their relationship to the defendant, and the defendant's actions in this case are even more egregious because of his prior history of sexual abuse.  Such predatory behavior must be met with severe punishment.  Moreover, given that the defendant committed similar crimes 20 years apart, he clearly lacks respect for the law, particularly for those laws designed to protect children.  A significant term of imprisonment is therefore necessary to reflect the seriousness of the offenses and to promote respect for the law.

In determining what is a just sentence in this case, the Court should also recognize the difficulties associated with bringing any case to trial, let alone one with international components. In this case, the government was – and remains – fully prepared to bring the four victims, and several additional witnesses, from Kenya to the United States.  But by securing a conviction at a relatively early stage, the government was able to guarantee that the victims in this case would not suffer additional trauma from traveling to the United States to testify and be cross-examined about the monstrous abuse they suffered at the hands of the defendant. Moreover, the defendant previously denied the allegations in this case and proclaimed that he – and not the girls he raped – was the victim here.  Now, he can never again deny that he abused those children given that he expressly admitted to the facts of the case, as outlined by the government at his change of plea hearing.  This will hopefully provide the victims with some closure on these horrifically traumatic events.

The government therefore submits that the recommended sentence of 188 months' imprisonment, followed by a lifetime of supervised release, will reflect the seriousness of the offenses and promote respect for the law, while providing a just sentence.

**3.     The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**

Deterrence is an important consideration in this case. Given the defendant's prior conviction, he needs to be specifically deterred from committing future crimes.  The recommended term of imprisonment will remove the defendant from society for a significant period of time and should act to deter the defendant from future criminal conduct.  But additional deterrence is also required.  As set forth above, the defendant is a sexual predator, who has abused minor victims in two separate countries over the course of two decades.  His age, the presence of his family in Kenya, and his involvement with his church did nothing to temper his

predatory behavior in this case.  The government is therefore requesting a lifetime of supervised release, to include regular reporting to the United States Probation Office, sex offender treatment, and computer monitoring.  Given that the defendant has in his lifetime pleaded guilty to sexually abusing five minor victims, this level of regulation is necessary to deter him from ever again preying on children.

The Court should also consider the need for general deterrence in this case. As the courts of appeals have held both before and after *Booker*, deterrence under Section 3553(a) is not limited to deterrence of the particular defendant.  *See, e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre *Booker* and post *Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). Here, the defendant abused children in a foreign country and then fled, believing he was beyond the reach of the law.  By sentencing the defendant to a significant term of imprisonment, the Court will send a message to others who would seek to perpetrate similarly heinous acts that if you sexually abuse children, regardless of where you do so, you will be apprehended and punished accordingly.

4. **The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

There is no need in this case to adjust the sentence to provide educational or vocational training.  Further, the defendant does not have any physical or mental health issues that cannot be managed by the Bureau of Prisons.

5. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Section 3553(a) is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct not disparities between codefendants.'"). The recommended sentence of 188 months' imprisonment is within the applicable Sentencing Guidelines range, which reflects the facts of the case and the defendant's history and characteristics.  The recommended term of imprisonment should therefore avoid any unwarranted sentencing disparity.

## V.      CONCLUSION

In sum, all the appropriate considerations of sentencing favor the imposition of a 188-

month term of imprisonment, to be followed by a lifetime on supervised release. For these

reasons, the government respectfully recommends that the Court impose that sentence in this

case.

                                        Respectfully submitted,

                                        WILLIAM M. McSWAIN
                                        United States Attorney

                                        *s/ Timothy M. Stengel*
                                        TIMOTHY M. STENGEL
                                        Assistant United States Attorney

Dated:  November 19, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within Government's

Sentencing Memorandum has been served this date by electronic filing and email on:


Catherine Henry, Esquire
Katrina Young, Esquire
Federal Community Defender Office
for the Eastern District of Pennsylvania
The Curtis Center Building
601 Walnut Street – Suite 540 West
Independence Square West
Philadelphia, PA 19106


*s/ Timothy M. Stengel*
TIMOTHY M. STENGEL
Assistant United States Attorney


Date: November 19, 2020